IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIM MCMULLEN** | : | **CIVIL ACTION NO. 1:06-CV-0183** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **FRANKLIN TENNIS** | : | |
| Respondent | : | |

## **MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) in which petitioner, Kim McMullen ("McMullen"), challenges a Pennsylvania state conviction for murder. He contends that the Double Jeopardy Clause was violated and that trial counsel was ineffective for failing to move to suppress his inculpatory statement. Also, in his reply, he challenges the admissibility of the inculpatory statement. For the reasons that follow, the petition will be denied.

I. **Statement of Facts**

The pertinent facts and state court procedural history are as follows:

> In the early morning hours of February 14, 1985, a grocery store in Orbisonia, Pennsylvania was burglarized. No suspect was arrested. A week later, the body of [the victim, [Dominic Barcelona]], a thirty year-old schizophrenic who frequently wandered around the community, was discovered in a creek not far from the scene of the burglary. At the time, the police made no connection between the two events, and, following an autopsy, [the victim's] death was ruled an accidental drowning. Both a highway bridge and railroad bridge were located not far upstream from where [the victim's] body was found.

In late 1989, when rumors surfaced that the burglary and [the victim's] death were related, both investigations were reopened. [McMullen] who at the time was incarcerated on other charges, gave a statement to police admitting that he and another man, Adam Wiser, committed the burglary, and, while fleeing, encountered [the victim] on a nearby bridge. [McMullen] stated that Wiser knocked [the victim] to the ground and then threw him into the creek.

A police investigation cleared Wiser of culpability in either crime, and [McMullen] was charged with burglary and homicide. The charges were tried together, and, on December 8, 1990, [McMullen] was convicted of both crimes. He was immediately sentenced to life imprisonment for the second degree murder conviction, and subsequently sentenced to eleven months to five year imprisonment for the burglary conviction.

[McMullen] appealed both convictions, contending, *inter alia*, that the Commonwealth had failed to establish a *corpus delicti* and, therefore, the trial court had erred in admitting his inculpatory statement. On direct appeal, [the Pennsylvania Superior Court] agreed, concluding that there was "no convincing evidence to indicate [the victim's] death was *more* consistent with a homicide than with an accident." Commonwealth v. McMullen, [616 A.2d 14, 17 (Pa. Super. 1992) (emphasis in original)]. Accordingly [the superior court] vacated both convictions and remanded for a new trial.

The Commonwealth, however, appealed to the Pennsylvania Supreme Court, which affirmed that portion of [the lower court's] order vacating [McMullen's] conviction for second degree murder, and reversed that portion vacating [McMullen's] burglary conviction. Commonwealth v. McMullen, 545 Pa. 361, 373, 681 A.2d 717, 723 (1995).

\* \* \*

Prior to [McMullen's] retrial on the homicide charge, the Commonwealth petitioned to exhume [the victim's] body and conduct a second autopsy. The trial court granted the Commonwealth's petition, although the petition was not served on [McMullen] until after the second autopsy had already been completed. Following the second autopsy, the cause of death was definitely ruled a homicide. [McMullen] subsequently filed a pre-

> trial motion to dismiss based on double jeopardy. The trial court denied the motion on February 4, 1997, and [McMullen] filed an appeal to the Pennsylvania Superior Court. [The superior court] affirmed the trial court's ruling, holding that the double jeopardy clause does not bar retrial in cases where the conviction is reversed because of improperly admitted evidence; only when an appellate court finds the evidence insufficient to sustain the verdict does the double jeopardy clause prohibit a retrial. Commonwealth v. McMullen, 721 A.2d 370, 371 (Pa. Super. 1998) (McMullen II). [The superior court] noted that, "although the evidence presently of record is insufficient to establish the *corpus deliciti* of murder," the Commonwealth must be granted an opportunity to "present its entire case . . . before any review of the sufficiency of the evidence may be undertaken by this Court."
>
> [McMullen] did not petition the Pennsylvania Supreme Court for review. On February 19, 1999, following a second trial, [McMullen] was once again convicted of second degree murder, and sentenced to life imprisonment.

Commonwealth v. McMullen, 745 A.2d 683, 685-86 (Pa. Super. 2000), appeal denied, 563 Pa. 700, 761 A.2d 549 (2000) ("McMullen III") (some internal citations omitted).

His judgment of sentence was affirmed. Id. The Pennsylvania Supreme Court denied *allocatur*. Thereafter, McMullen timely filed a PCRA petition. An evidentiary hearing was conducted. The PCRA petition was dismissed on February 20, 2004, and McMullen appealed to the superior court. (Doc. 15-7, pp. 4, 15-19). The superior court affirmed the dismissal of the PCRA petition. (Doc. 15-7, p. 14). His petition for allowance of appeal was denied on November 23, 2005.

McMullen filed the present petition on January 24, 2005.

## II. Claims Presented in Federal Petition

### A. Double Jeopardy

McMullen's double jeopardy argument is twofold.  First, he argues that the reversal of his first conviction on the grounds of insufficiency of the evidence invoked the double jeopardy clause and prevented a retrial.  This issue was raised on direct appeal.[1]  Commonwealth v. McMullen, 754 A.2d 683, 685-89 (Pa.Super. 2000).  The superior court addressed the issue as follows:

> The Double Jeopardy Clause clearly prevents a retrial in two circumstances.
>
>> First, the Double Jeopardy Clause attaches special weight to judgments of acquittal.  A verdict of not guilty, whether rendered by the jury or directed by the trail judge, absolutely shields the defendant from retrial.  A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.
>>
>> Tibbs [v. Florida], 457 U.S. [31,] 41, 102 S.Ct. [2211], 2218, 72 L.Ed.2d [652], 661 [(1982)].  When reversal is based on insufficiency of the evidence, "the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble."  Burks [v. United States], 437 U.S. [1], 16, 98 S.Ct. [2141], 2149-50, 57 L.Ed.2d [1], 12 [(1978)].  To permit retrial would "afford the government an opportunity for the proverbial 'second

---

[1]The only appellate issue considered on the merits was whether McMullen's double jeopardy rights were violated.  He raised four other issues, each of which consisted of a one paragraph argument with no citation to relevant statutory authority or caselaw.  The  superior court considered the issues waived stating that "'[w]hen the appellant fails to adequately develop his argument, meaningful appellate review is not possible.' Commonwealth v. Genovese, 450 Pa.Super. 105, 675 A.2d 331, 334 (1990)." Commonwealth v. McMullen, 745 A.2d 683, 689 (Pa. Super. 2000).  The court concluded that McMullen's "blanket assertions" were simply insufficient.  Id.

> bite at the apple.'" Id. at 17, 98 S.Ct. at 2150, 57 L.Ed.2d at 13. However, the Double Jeopardy Clause does not preclude retrial when a defendant's conviction is overturned on grounds other than the insufficiency of the evidence. Lockhart v. Nelson, 488 U.S. 33, 38-39, 109 S.Ct. 285, 289-90, 102 L.Ed.2d 265, 272 (1988) (citing Burks, *supra*.)
>
>> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through judicial process which is defective in some fundamental respect, *e.g.* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair adjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.
>
> Burks, 437 U.S. at 15, 98 S.Ct. at 2149, 57 L.Ed.2d. at 12. See McMullen II, *supra*.

The superior court acknowledged that McMullen's case did not fall neatly into either category governing double jeopardy; it observed that "[w]hile the record presently before this Court strongly suggests that the Commonwealth will not be able to meet its burden of proof [to establish the *corpus delicti*], that issue is not yet ripe for review by this Court," [McMullen II, 721 A.2d at 371-72], that is, the Commonwealth should have the opportunity to present its entire case before a ruling on the sufficiency of the *corpus delicti* is made." McMullen, 745 A.2d. at 688.

McMullen also claimed that the trial court violated his double jeopardy rights by admitting evidence from the second autopsy. This issue was addressed in the following manner:

> [McMullen's] argument here . . . focuses on the additional evidence presented by the Commonwealth to establish the *corpus delicti* in the second trial.
>
> * * *
>
> We find no case law precluding the Commonwealth from gathering additional evidence before retrial to establish the *corpus delicti* that was clearly lacking in the first trial. In fact, this Court, in its opinion following [McMullen's] first trial, specifically vacated the convictions and remanded the case for a new trial. On appeal, the Supreme Court affirmed that portion of the Superior Court order vacating [McMullen's] murder conviction, and, by implication, affirmed the grant of a new trial. Neither decision precluded the Commonwealth from gathering more evidence before retrial.

Id. at 688-89 (internal citations omitted).

In his PCRA appeal to the superior court, McMullen again raised the issue of double jeopardy. The court found that this issue was previously litigated because it was addressed on direct appeal. (Doc. 15-7, p. 6).

B.  Ineffective Assistance of Counsel

McMullen challenges the effectiveness of his trial counsel in failing to move to suppress the inculpatory statement.[2] The state court observed that in order to prevail on a claim alleging counsel's ineffectiveness McMullen must demonstrate the following:

---

[2]Although McMullen apparently raised other issues of trial counsel's effectiveness, his present petition only challenges counsel's failure to move to suppress the inculpatory statement. (Docs. 1, 10).

6

>1) [T]hat the underlying claim is of arguable merit; 2) that counsel's course of conduct was without any reasonable basis designed to effectuate his client's interest; and 3) that he was prejudiced by counsel's ineffectiveness, *i.e.*, there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.
>
>Commonwealth v. Whitmore, ___ A.2d ___, 2004 PA Super 365, ¶ 5 (filed Set 20, 2004). "If a reasonable basis exists for the particular course chosen by counsel, the inquiry ends and counsel's performance is deemed constitutionally effective." Commonwealth v. Lauro, 819 A.2d 100, 106 (Pa. Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003).

(Doc. 15-7, pp. 7-8). The following exchange, which took place during the PCRA petition evidentiary hearing, was cited by the superior court:

>[Commonwealth]: Did you make any decision or recommendation to your client about whether to challenge the [inculpatory] statement on any theory, including this alleged theory of immunity?
>
>[Counsel]: I have not had occasion to review [McMullen's] PCRA petition as presented.
>
>[Commonwealth]: You knew that the admissibility of the statements had been litigated in the first trial?
>
>[Counsel]: Yes.
>
>[Commonwealth]: Did you talk about whether to file a second suppression motion to re-litigate in the second trial the issues that had been litigated in the first trial with regard to the statements?
>
>[Counsel]: I do not recall. I do recall reviewing line by line the suppression hearing conducted by [Attorney Kroboth] in regards to a statement made by [McMullen] to the state police while he was an inmate at the county jail. I recall reviewing those. I do not today recall discussing with [McMullen] whether or not to, I guess, in effect, file for leave of court to file a second omnibus pre-trial motion to supplement [Attorney Kroboth's].

7

> [Commonwealth]: Were you satisfied that those issues had been fully litigated?
>
> [Counsel]: Yes, I was satisfied.

(Doc. 15-7, pp. 10-11). The court then concluded that "in light of these facts and the applicable standard of review, counsel had reasonable bases for his trial strategies, which were designed to effectuate his client's interest." (Doc. 15-7, p. 14) (citations omitted).

### C.   Admission of Inculpatory Statement

In his reply brief, McMullen also claims that his confession was coerced. In his PCRA appeal, McMullen asserted that police promised to provide him with immunity in exchange for an inculpatory statement. The superior deemed the issue waived, stating:

> An issue is waived under the PCRA if it was not raised on direct appeal. Commonwealth v. Santiago, ___ Pa. ___, 855 A.2d 682, 695 (2004) (citing Commonwealth v. Albrecht, 554 Pa. 31, 45, 720 A.2d 693, 700 (1998)): 42 Pa. C. S. A. § 9543(a)(3). Here [McMullen] did not challenge the propriety of his inculpatory statement on direct appeal [of the conviction obtained in the second trial]. Accordingly, [McMullen's] second issue is waived. See Santiago, *supra*; Albrecht, *supra*.

(Doc. 15-7, p. 7).

### III.   Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.     Habeas Exhaustion Requirements

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Id.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); McCandless, 172 F.3d at 260; Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless, 172 F.3d at 260; Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982). Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451

(2000); Wenger, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

In the matter *sub judice*, McMullen's claim concerning the admissibility of the inculpatory statement is waived. Under Pennsylvania law, the claim is deemed waived because it could have been raised at an earlier stage in the proceeding. 42 PA. CONS. STAT. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"). Indeed, the superior court refused to address the issue because it was raised for the first time in his appellate brief on collateral review. Thus, this claim is procedurally defaulted based upon an "independent and adequate ground". Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Slutzker v. Johnson, 393 F.3d 373, 381) (3d Cir. 2004); Barnhart v. Kyler, 318 F.Supp.2d 250, 257-259 (M.D. Pa 2004). Moreover, because McMullen has failed to demonstrate either cause and prejudice, or a fundamental miscarriage of justice, review of this procedurally defaulted state claim is foreclosed.

**B.    Habeas Claims**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

>> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was "contrary to" federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Id.

      1.     Double Jeopardy

In his memorandum of law, McMullen weaves the two double jeopardy issues together, emphasizing that, because the state court ruled that the evidence was insufficient, the order allowing a second trial (and introduction of any new evidence during the second trial) violated the double jeopardy clause. (Doc. 10, p. 11). The court disagrees. The state court specifically stated that "[w]hile the record presently before this Court strongly suggests that the Commonwealth will not be able to meet its burden of proof [to establish the *corpus delicti*], that issue is not yet ripe for review by this Court," [McMullen II, 721 A.2d at 371-72], that is, the Commonwealth

should have the opportunity to present its entire case before a ruling on the sufficiency of the *corpus delicti* is made." McMullen, 745 A.2d. at 688. Clearly, the sufficiency of the evidence was not passed upon by the state court such that the double jeopardy clause was invoked. This is further evidenced by the following excerpt from the superior court opinion addressing Mcmullen's direct appeal :

> After [McMullen] was granted a new trial, the Commonwealth exhumed Barcelona's body and performed a second autopsy which established that Barcelona's death resulted from criminal means, specifically, drowning following an assault. Although this evidence was available prior to [McMullen's] first trial, double jeopardy principles do not preclude the Commonwealth from presenting new evidence at a second trial when the first trial is reversed based on an erroneous evidentiary ruling; "[a] second chance for the defendant, of course, inevitably affords the prosecutor a second try as well." Tibbs [v. Florida], 457 U.S. [31,] 43 n. 19, 102 S.Ct. [2211] 2219 n. 19, 72 L.Ed.2d [652] 662 n. 19 [(1982)]. Here, the error was the trial court's improper admission of [McMullen's] statement.
>
> The Commonwealth's case may be strengthened or weakened by the passage of time. Because the evidence presented during the first trial was legally sufficient to sustain the verdict, albeit strengthened by [McMullen's] inadmissible statement, the Commonwealth is not precluded from introducing additional evidence during retrial; "the type of 'second chance' that the State receives when a court rests reversal on evidentiary weight does not involve the overreaching prohibited by the Double Jeopardy Clause." Id. Therefore, during the second trial, the Commonwealth was permitted to introduce evidence of the second autopsy to establish the *corpus delicti* of murder, and render [McMullen's] statement admissible.

McMullen, 745 A.2d at 688.

In considering both of the double jeopardy issues raised by McMullen, the state court wholly relied on United States Supreme Court precedent as is evident from the double jeopardy discussion, in Section II(A), *supra*. McMullen fails to

13

establish that the state court decisions concerning the double jeopardy clause were contrary to, or involved unreasonable applications of, clearly established Federal law, as determined by the Supreme Court of the United States.  McMullen does not point to Supreme Court precedent which would require the contrary outcome.  See Matteo, 171 F.3d at 888.  Nor has he established that the state court decisions resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.  Accordingly, his request for relief on the grounds of double jeopardy will be denied.

2.     Ineffective Assistance of Counsel

McMullen claims that trial counsel was ineffective for failing to move to suppress his confession.  He criticizes counsel for failing to study the transcript concerning the suppression hearing conducted in the first trial, thereby missing the fact that the voluntariness of the conviction had not been determined.

To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).[3]  In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness.

---

[3] The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

14

See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

The standard utilized by the superior court in evaluating the ineffective assistance of counsel claim, Section II B, *infra*, complies with the standards set forth by the Supreme Court. Counsel's PCRA hearing testimony revealed that the admissibility of the statement was litigated during the first trial and that counsel was satisfied that the issue had been fully litigated. Based on this information, the superior court found that trial counsel had a reasonable basis for not moving to suppress the statement. There is no indication that this conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Nor can the court conclude that this decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. See Matteo, 171 F.3d at 891. The law relied upon by the superior court in reaching its holding was in accordance with Supreme Court precedent and McMullen does not point to Supreme Court precedent which would require the contrary outcome. See id. Accordingly, habeas relief on this ground will be denied.

**IV.    Conclusion**

Based on the foregoing determinations that one of McMullen's claims is procedurally defaulted and that the remaining claims are meritless, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     November 29, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIM MCMULLEN** | : | **CIVIL ACTION NO. 1:06-CV-0183** |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **FRANKLIN TENNIS** | : | |
| | : | |
| Respondent | : | |

## **ORDER**

AND NOW, this 29th day of November, 2006, upon consideration of the petition for writ of habeas corpus, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

3. There is no basis for the issuance of a certificate of appealabilty.  See 28 U.S.C. § 2253(c)

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge